UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT RICHARDS, 24-B-2386,

                Plaintiff,

    -against-

NASSAU COUNTY,

                Defendant.
------------------------------------------------------------------------X

FILED
CLERK
1/8/2025 2:08 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM AND ORDER**
24-CV-7957(GRB)(ARL)

**GARY R. BROWN, United States District Judge:**

      Before the Court is the application of Robert Richards ("Plaintiff") to proceed *in forma pauperis* ("IFP") in relation to his *pro se* complaint and filed while incarcerated at the Altona Correctional Facility.  *See* Docket Entry "DE" 1-2, 6.  Plaintiff complains of events alleged to have occurred while he was detained at the Nassau County Correctional Center ("NCCC").  (See DE 1, *in toto*.)  Upon review of Plaintiff's submissions, the Court finds that he is qualified by his financial position as reported in his IFP application to proceed without prepayment of the filing fee.  Accordingly, the application to proceed IFP (DE 2, 6) is granted.  However, for the reasons that follow, the Court finds that Plaintiff has not alleged a plausible claim and the complaint is thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1) without prejudice and with leave to file an amended complaint.

## BACKGROUND[1]

      Plaintiff's complaint is submitted on the Court's civil rights complaint form for actions brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and is brief.  *See* DE 1.  Plaintiff names Nassau County ("Defendant") as the sole Defendant.  In its entirety, Plaintiff alleges that, while

---

[1] Excerpts from the complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

1

detained at NCCC from February 2024 to March 2024 at "[a]ll chow times":

> From March and prior after eating the food served at Nassau County Jail I would at first feel [indecipherable] then sick. I checked the expiration dates on what had them on it and saw that the food was weeks old & notified the guard but no changes were maid. I only eat commissary after getting sick.

DE 1 at ¶ II.

In the space that calls for a description of any injuries suffered and any medical treatment required and/or received Plaintiff wrote: "I had pain in my stomack and threw up twice before I realized it was the food sweating and feeling cold notified guard no medical treatment was given." *Id.* at ¶ IV.A. For relief, Plaintiff seeks to recover a damages award in the sum of $80,000 from the Defendant "for pain and suffering also wish to have all food checked before being served at Nassau County Jail." *Id.* at ¶ III.[2]

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether a plaintiff qualifies for IFP status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### I.     Qualification for IFP Status

Upon review of the Plaintiff's IFP application (DE 2, 6), the Court finds that Plaintiff is qualified by his reported financial position to commence this action without prepayment of the filing fee. Accordingly, the IFP application is granted. The Court turns next to the merits of the complaint.

### II.    Sufficiency of the Pleadings

---

[2] Given that Plaintiff is no longer incarcerated at the NCCC, he lacks standing to seek this injunctive relief. *See, e.g., Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir.1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.")

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). It is axiomatic that district courts are required to read pro se complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ].'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, --- U.S. ----, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).
>
> Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

I. **Section 1983**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id*. The Court analyzes Plaintiff's Section 1983 claims below.

A. **Municipal Liability**

Municipal governments, like Nassau County, may be held liable under Section 1983 "only for unconstitutional or illegal policies, not for the illegal conduct of their employees." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, Nassau County could only face liability if Plaintiff alleged a pattern or practice of such conduct. To state a claim against a municipality under Section 1983, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." (*Id*.) (internal quotation marks and citation omitted). Here, as is readily apparent, Plaintiff's sparse complaint is devoid of any such allegations. Plaintiff has not pled that the allegedly unconstitutional conditions of his confinement concerning the quality of the food served and the medical treatment -- or lack thereof -- were the result of a policy or practice of Nassau County. *See*, *e.g.*, *Parker v. Suffolk County Police Dept.,* No. 22-CV-3969(GRB)(AYS), 2023 WL 5047784, at *6 (E.D.N.Y. Aug. 7, 2023) (citing *Joyner-El v. Giammarella*, No. 09-CV-2731 (NRB), 2010 WL 1685957, at *7-8

4

(S.D.N.Y. Apr. 15, 2010)) (dismissing any *Monell* claim because the plaintiff had "pointed to no policy or custom on the part of New York City that might plausibly have caused any of his alleged constitutional injuries"); *Overhoff v. Ginsburg Dev., L.L.C.*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001) (dismissing Section 1983 complaint against municipality due to plaintiff's failure to "allege that her constitutional rights were violated pursuant to any municipal policy or custom"). Given the absence of allegations suggesting that the alleged deprivation of Plaintiff's constitutional rights was pursuant to some municipal policy or custom, Plaintiff's claims are not plausible and are thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

### B. Conditions of Confinement Claims

Even if Plaintiff had sufficiently alleged municipal liability, his conditions of confinement claims do not plausibly allege a constitutional deprivation. Plaintiff has not alleged whether he was a convicted prisoner or a pretrial detainee at the time of the challenged conduct.[3] Regardless, all "'[p]risoners and detainees have constitutionally protected rights to receive humane conditions of confinement, including adequate food, clothing, shelter, medical care, and security.'" *Arroyo v. Nassau Cnty. Corr.*, No. 22-CV-5611(GRB)(LGD), 2022 WL 16636774, at *3 (E.D.N.Y. Nov. 2, 2022) (quoting *McKoy v. Suffolk County Corr. Fac.*, No. 21-CV-1873, 2022 WL 1092385, at *2 (E.D.N.Y. Apr. 12, 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth and Fourteenth Amendments require "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.

---

[3] Plaintiff's custody status is relevant because, if he is a pretrial detainee, his claim arises under the Due Process Clause of the Fourteenth Amendment; but, if he is a convicted prisoner, these claims arise under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See*, *e.g.*, *El Dey v. Bd. of Correction*, No. 1:22-CV-2600 (LTS), 2022 WL 2237471, at *8 (S.D.N.Y. June 22, 2022) (citing *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

1983) (*per curiam*). Under either amendment, "[t]he deliberate indifference standard embodies both objective and subjective elements: (1) the alleged deprivation must be, in objective terms, sufficiently serious; and (2) the charged official conduct must act with a sufficiently culpable state of mind." *Espinosa v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-0223 (GRB), 2020 WL 4614311, at *3 (E.D.N.Y. July 22, 2020) (internal quotation marks and citation omitted).

Plaintiff's allegations that some food served to him was expired by a few weeks and caused him to vomit twice and feel sick after eating does not rise to the level of a constitutional deprivation. *Compare Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) (finding allegations that prisoner was served nothing but stale bread and rotten cabbage for one week adequate to allege an objective deprivation supporting an Eighth Amendment inadequate nutrition claim). Moreover, wholly absent are any allegations that any individual acted with a sufficiently culpable state of mind. *Ward v. Goord*, No. 06-CV-1429, 2009 WL 102928, at *7 (N.D.N.Y. Jan. 13, 2009) (noting that an inmate's allegation that he was served rotten food may have been sufficient to allege an Eighth Amendment violation if he named the appropriate defendants). The complaint is bereft of any facts showing that Defendant was deliberately indifference to the risk allegedly posed by the food served to Plaintiff. (*See* Compl., DE 1 *in toto*.) Therefore, Plaintiff's conditions of confinement claim concerning the food is not plausible and is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

Similarly, insofar as Plaintiff alleges that the medical care (or lack thereof) was constitutionally deficient, this claim too is implausibly pled. "Conclusory allegations that medical staff defendants were aware of a plaintiff's medical needs and failed to provide adequate care are generally insufficient to state an Eighth [or Fourteenth] Amendment claim of inadequate medical care." *Flemming v. Smith*, No. 11-CV-00804, 2014 WL 3698004, at *6 (N.D.N.Y. July

24, 2014) (citing *Gumbs v. Dynan*, No. 11-CV-857(RRM)(LB), 2012 WL 3705009, at *12 (E.D.N.Y. Aug. 26, 2012) ("[C]onclusory allegations that defendants were aware of plaintiff's medical needs and chronic pain but failed to respond are generally not sufficient proof of defendant's deliberate indifference and cannot survive a Rule 12(b)(6) motion to dismiss.") (add'l citation omitted)). Given the absence of any allegations concerning any individual -- much less his or her state of mind – Plaintiff's conditions of confinement claims concerning medical care fail and are thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

## II.     State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - - judicial economy, convenience, fairness, and comity - - will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the amended complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any

potential state-law claims contained in Plaintiff's complaint.

### III.   Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, leave to amend should typically be withheld only if amendment would be futile -- that is, if it is clear from the facts alleged that the events in question cannot give rise to liability. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). It is not clear that amendment would be futile here, so Plaintiff may attempt to replead these allegations with the specificity and level of detail required by the case law discussed above.

Accordingly, Plaintiff is granted leave to file an amended complaint to afford him an opportunity to allege as plausible claim. If Plaintiff chooses to amend his complaint, he shall do so within thirty (30) days from the date of this Order and include facts from which the Court could reasonably construe that the conditions of his confinement and/or the alleged denial of medical treatment were extreme enough to constitute a "substantial risk of serious harm" and that each person named as a defendant consciously disregarded it. Any amended complaint shall be clearly labeled "Amended Complaint" and shall bear the same docket number as this Order, 24-CV-07957(GRB)(ARL). If Plaintiff does not timely file an amended complaint, judgment shall enter without further notice and this case will be closed. Alternatively, Plaintiff may pursue any valid claims he may have in state court.

### IV.   Section 1915 Privilege

The Second Circuit has long-established that "the benefit of § 1915 is a privilege, not a right . . . and that the court's 'extra measure of authority' in dealing with § 1915 actions is necessary because frivolous suits unduly burden the courts, sometimes obscuring meritorious claims, occasion significant expenditures of public monies, and are a means by which plaintiffs can use the federal government to harass individual defendants." *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983) (citations omitted). As *in forma pauperis* status is not a constitutional right but rather a congressionally created benefit, it can be extended or limited by Congress. *Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (citation omitted). Indeed, to help staunch a "flood of nonmeritorious" prisoner litigation, the Prison Litigation Reform Act of 1995 (PLRA) established what has become known as the three-strikes rule. *Lomax v. Ortiz-Marquez*, 590 U.S. ----, 140 S. Ct. 1721, 1723 (2020) (citing *Jones v. Bock*, 549 U.S. 199, 203 (2007)). That rule generally prevents a prisoner from bringing suit *in forma pauperis*—that is, without first paying the filing fee—if he has had three or more prior suits "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *Id*. (quoting 28 U.S.C. § 1915(g)).

In determining when a plaintiff should receive a strike for a dismissed case under section 1915(g), the Second Circuit has made clear that district courts should not impose strikes in its dismissal orders. *See James v.* McIntosh, 24-624, 2024 WL 4662980 (2d Cir. Nov. 4, 2024) ("a district court errs in entering a strike at the dismissal stage") (citing *Deleon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004)). Rather, a district court should only consider whether a plaintiff has three strikes if it appears that the plaintiff has run afoul of section 1915(g) and is barred from proceeding *in forma pauperis* in the instant action. *See id.* As such,

> [T]he district court judgments should clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is "frivolous," "malicious,"

9

> or "fails to state a claim," whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons.
>
> Clarifications of this sort will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).

*Deleon*, 361 F.3d at 95 (citing *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999)) (purgandum).[4]

Incarcerated litigants face a greater risk of various harms while in prison, including physical injuries, poor prison conditions, inadequate medical care, and other constitutional deprivations, making their access to relief from the judicial system of the utmost importance. *See Rosa v. Doe*, No. 21-2628, 2023 WL 8009400 (2d Cir. Nov. 20, 2023) (discussing history and importance of IFP status). This access, however, when done through IFP status, is not unrestricted and the indigent prisoner should be made aware of the limitations. Once a prisoner accrues three dismissals based on either frivolousness, maliciousness, or for failure to state a claim, that prisoner will be prohibited from commencing another action or appeal IFP unless he is in imminent physical danger—regardless of the meritoriousness of the case. *See*, *e.g.*, *Polanco v. Hopkins*, 510 F.3d 152, 155 (2d Cir. 2007) (affirming dismissal of prisoner's IFP action alleging claims of exposure to mold and unjust discipline based on the three-strikes rule); *Fate v. New York*, No. 19-CV-4107 (CS), 2021 WL 1177966, at *7 (S.D.N.Y. Mar. 26, 2021) (dismissing prisoner's IFP case alleging campaign of police harassment and retaliation and a physical assault under the three-strikes rule). Indeed, "[r]equiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by

---

[4] *See Farmers Property and Casualty Insur. Co. v. Fallon*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "purgandum" to indicate the removal of superfluous marks for the ease of reading).

the state." *Nicholas v. Tucker*, 114 F.3d 17, 21 (2d Cir. 1997) (citation omitted).

Here, the Court does not impose any strikes against the Plaintiff but will note, for the *pro se* Plaintiff's benefit, that the statute under which he is proceeding is a privilege subject to revocation. And the plain language of § 1915(g) suggests that such revocation is compulsory in the face of abuse. *See* 42 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or proceeding under this section if the prisoner has [violated the three-strike rule] unless the prisoner is under imminent danger of serious physical injury.") (emphasis added); *see also Lomax*, 140 S. Ct. at 1723-24 ("That provision bars further IFP litigation once a prisoner has had at least three prior suits dismissed on specified grounds."). Accordingly, the Plaintiff proceeding IFP here is cautioned that the dismissal of the present complaint for failure to state a claim may be considered a strike by a future court and contribute to the determination that he has violated the three-strikes rule of § 1915(g), barring him from commencing further actions or appeals IFP.

## CONCLUSION

Based on the foregoing, Plaintiff's IFP application (DE 2, 6) is granted; however, the complaint (DE 1) is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1). Plaintiff is granted leave to file an amended complaint. If Plaintiff chooses to amend the complaint in accordance with this Memorandum and Order, he shall do so within thirty (30) days from the date at the bottom of this page. Any amended complaint shall be clearly labeled "Amended Complaint" and shall bear the same docket number as this Order, 24-CV-07957(GRB)(ARL). Should Plaintiff elect to file an amended complaint, it will be screened pursuant to the requirements of 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). If Plaintiff does not timely file an amended complaint, judgment shall enter without further notice and this case will be closed. The Clerk of the Court shall mail a copy of this Memorandum and Order to the *pro se*

Plaintiff at his address of record in an enveloped marked "Legal Mail" and note service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

/s/Gary R. Brown\
**Gary R. Brown**\
**United States District Judge**

Dated: January 8, 2025,\
Central Islip, New York